**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

WILLIAM DANIEL KAVANAUGH,           )
                                    )
            Plaintiff,              )
                                    )
    v.                              )        No. 4:19-cv-03256-NCC
                                    )
DUSTIN EDWARDS, et al.,             )
                                    )
            Defendants.             )

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff William Daniel Kavanaugh

for leave to commence this civil action without prepayment of the required filing fee. (Docket No.

3). Having reviewed the motion and the financial information submitted in support, the Court has

determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial

partial filing fee of $64.33. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed

below the Court will dismiss the claim against the Florissant Police Department, the official

capacity claims against all defendants, and the claim against defendant Karen Goodwin.

Furthermore, the Court will dismiss plaintiff's excessive force claim against defendant Dustin

Edwards. Finally, the Court will stay all the claims relating to plaintiff's traffic stop, the search of

his vehicle, the search of his cell phone, and his arrest.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed in forma pauperis, plaintiff submitted a copy of his certified inmate account statement. (Docket No. 4). The account statement shows an average monthly deposit of $321.64. The Court will therefore assess an initial partial filing fee of $64.33, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not

2

required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently a pretrial detainee at the Macoupin County Jail in Carlinville, Illinois. He brings this civil action pursuant to 42 U.S.C. § 1983. In his complaint, he names the following defendants: Detective Dustin Edwards; Detective Nicholas Osmer;[1] Custodian of Records Karen Goodwin; the Florissant Police Department; John Doe #1; and John Doe #2. (Docket No. 1 at 3-5). Defendants are sued in both their official and individual capacities.

---

[1] Confusingly, plaintiff also names Detective Unknown Osmond and John Doe #3 as defendants. However, in the body of the complaint, plaintiff states his belief that Nicholas Osmer is the "true identity of Detective Osmond." (Docket No. 1 at 2). Later, plaintiff further explains that John Doe #3 is also believed to be Nicholas Osmer. (Docket No. 1 at 17). In short, defendants Osmer, Osmond, and Doe #3 appear to be the same person. For the sake of clarity, and based on plaintiff's allegations, the Court will refer only to defendant Osmer.

3

The forty-two-page complaint is handwritten on a Court form. Attached to the complaint are a number of exhibits, including Freedom of Information Act requests, a state court docket sheet, a statement of probable cause authored by Detective Edwards, and an Illinois parole violation report. The Court has reviewed these exhibits and will treat them as part of the pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

On July 27, 2018, plaintiff states that he was involved in a traffic stop on Interstate 270 in Florissant, Missouri. (Docket No. 1 at 4). During the stop, plaintiff asserts that his constitutional rights were violated in various ways. (Docket No. 1 at 4, 7).

Plaintiff states that the traffic stop was initiated by Detective Edwards. (Docket No. 1 at 13). He asserts that Detective Edwards first told him that he was pulled over because "the license plate did not match the vehicle." Later, Detective Edwards allegedly "changed his story" to say that plaintiff had not used his turn signal. (Docket No. 1 at 14).

Detective Edwards had plaintiff step out of the vehicle and patted him down for weapons. Plaintiff states that Detective Edwards asked him for consent to search the vehicle, but plaintiff repeatedly advised Edwards that he was not giving him permission. He further states that Detective Edwards did not have a warrant or probable cause. At this point, Detective Edwards put plaintiff in handcuffs, informed him that he was "the Dope Police," and told him that he was going to search the vehicle.

Officer Doe #1 was the second officer on the scene. He "stood guard over" plaintiff while Detective Edwards "did a very thorough search of the vehicle." In particular, plaintiff states that Detective Edwards "searched the undercarriage, looked in the gas tank, under the hood, in the wheel-walls, in the dashboard, [and] even removed all plastic molding and door panels inside the

4

vehicle." (Docket No. 1 at 15). Beyond that, Detective Edwards also "searched through [plaintiff's] electronic messages that were on a cell phone inside the vehicle." Detective Edwards questioned plaintiff about "an outgoing message on the phone, asking for an ounce." Plaintiff advised Detective Edwards that "he was confused," because "the outgoing message…[was] a message from [plaintiff], asking for an address."

Following this exchange, plaintiff states that Detective Edwards told him that Edwards "wanted to search [him] better." Detective Edwards further advised plaintiff that if he did not have anything illegal on him, he "would be free to leave." Plaintiff consented to having his pockets searched. However, Detective Edwards advised that "he wanted to perform a body cavity search," but was not allowed to do so in a public place. (Docket No. 1 at 15-16). Detective Edwards then asked plaintiff to go to the Florissant Police Department so that Edwards could conduct a body cavity search. (Docket No. 1 at 16). Plaintiff refused to accompany Detective Edwards or agree to a body cavity search because he was not under arrest.

According to plaintiff, Detective Edwards became angry at this response, and re-searched plaintiff's vehicle, again finding nothing. Next, despite plaintiff's refusal to consent to a body cavity search, Detective Edwards took plaintiff to the side of Edwards's car, while plaintiff was still handcuffed. Detective Edwards allegedly unfastened plaintiff's belt and pulled down his pants and underwear. Plaintiff claims that Detective Edwards "used his hands, as well as a cold metal object," to conduct a search. During this incident, plaintiff states that Officer Doe #1 "stood by and watched."

Nothing was found as a result of this search, and Detective Edwards "made the decision to release" plaintiff. (Docket No. 1 at 16-17). However, as Detective Edwards was removing plaintiff's handcuffs, Detective Osmer and Officer Doe #2 arrived on scene. (Docket No. 1 at 17).

5

Detective Osmer and Officer Doe #2 performed another search of plaintiff's vehicle. Plaintiff states that this search was conducted without his consent, without a warrant, and without probable cause. During this search, Detective Osmer "claimed" to find an illegal substance. Plaintiff believes this "was planted[,] fabricated evidence." He asserts that defendants wanted to use this evidence against him in an attempt to put him in jail, and to "impede [his] right to take legal action and pursue justice against" Detective Edwards.

Detective Edwards put handcuffs back on plaintiff and "locked [plaintiff] in the back seat of [Edwards's] car." At this point, plaintiff states that "the windows were rolled down just enough for fresh air flow," and the air conditioner was on. Plaintiff was left in the car "unsupervised" while Detective Edwards allegedly "conspired with the other officers." After speaking with the other officers, Detective Edwards gave plaintiff two options. (Docket No. 1 at 17-18). First, plaintiff was told that he could cooperate with Detective Edwards, after which plaintiff would be allowed to drive away without being charged. (Docket No. 1 at 18). Second, if plaintiff did not cooperate, Detective Edwards "would retaliate against [him] by contacting [his] Illinois parole agent and convince him to issue a parole violation warrant for [his] arrest." Plaintiff advised Detective Edwards that he did not know anything about Edwards's investigation. He also "invoked [his] right to an attorney, even though [Edwards] failed to read [plaintiff his] Miranda Rights."

Thereafter, plaintiff alleges that "retaliation began." He asserts that Detective Edwards rolled up the windows in the car and shut off the air conditioner "while he conspired with the other officers." Furthermore, Detective Osmer contacted plaintiff's Illinois parole agent and "convinced him to issue a parole violation warrant for [plaintiff's] arrest." Plaintiff claims that Detective Osmer provided his parole agent "a set of false facts" when Osmer told the agent that plaintiff had new felony drug charges. In support, plaintiff states that he had not yet been charged with

6

possession of methamphetamines, and that there was no way anyone could have known – prior to lab testing – that the substance allegedly found in his vehicle was methamphetamines. (Docket No. 1 at 18-19).

Plaintiff states that upon arrival at the Florissant Police Department, Detective Edwards took him to an interview room where he "performed another body cavity search." (Docket No. 1 at 19). Plaintiff was ultimately booked into jail, but states that he was not charged until November 28, 2018, in the case of *State of Missouri v. Kavenaugh*, No. 18SL-CR08763 (21st Jud. Cir., St. Louis County).[2]

Subsequent to his booking, plaintiff "made several attempts to gain access to all defendant information" relevant to his civil complaint. (Docket No. 1 at 11). The information he requested included full names, badge numbers, and addresses for the purpose of service of process. However, plaintiff claims that Custodian of Records Goodwin "has engaged in a shell game." (Docket No. 1 at 12). In particular, he asserts that Goodwin did not provide him with his requested information until "after [his] third and fourth request." Moreover, he complains that the addresses provided by Goodwin were not defendants' personal addresses, but the address for the Florissant Police Department.

Based on these allegations, plaintiff asserts that Detective Edwards violated his constitutional rights by performing an illegal search of his vehicle, his cell phone, and his person. (Docket No. 1 at 7-8). Plaintiff asserts that Detective Edwards's actions violated his Fourth and Eighth Amendment rights. (Docket No. 1 at 23-25). He also claims that Detective Edwards "tortured" him and violated the Eighth Amendment when Edwards shut off the air conditioner and rolled up the windows of Edwards's car while plaintiff was in the backseat. (Docket No. 1 at 10).

---

[2] The Court notes that plaintiff's surname is given a different spelling in the Missouri state court case caption than that provide by plaintiff in the instant case.

Plaintiff further states that Detective Edwards illegally arrested him for an Arizona probation violation, even though "the geographical boundaries on that warrant" included only states surrounding Arizona. (Docket No. 1 at 13). He alleges that this arrest violated the Fifth and Fourteenth Amendments. (Docket No. 1 at 26).

As to Officer Doe #1, plaintiff asserts that Doe #1 failed to intervene and protect him against Detective Edwards, even though Detective Edwards violated plaintiff's rights "right in front of him." (Docket No. 1 at 8). Specifically, plaintiff states that Officer Doe #1 did not protect him against Detective Edwards's "unreasonable body cavity search, sexual assault, torture, and public humiliation." (Docket No. 1 at 8-9). Instead, Officer Doe #1 "just stood by and watched." (Docket No. 1 at 9).

As to Officer Doe #2, plaintiff alleges that Doe #2 performed an illegal search of plaintiff's vehicle, without consent, a search warrant, or probable cause. Plaintiff asserts that this search violated the Fourth Amendment. (Docket No. 1 at 28).

As to Detective Osmer, plaintiff alleges that Osmer also illegally searched plaintiff's vehicle, without consent, a search warrant, or probable cause, in violation of the Fourth Amendment. (Docket No. 1 at 9, 28). Furthermore, plaintiff asserts that Detective Osmer contacted his Illinois parole agent and convinced him to issue a parole violation warrant based on a false set of facts. (Docket No. 1 at 10). Plaintiff contends that Detective Osmer's interactions with the Illinois parole agent violated his Fifth and Fourteenth Amendment rights. (Docket No. 1 at 25).

As to Custodian of Records Goodwin, plaintiff accuses Goodwin of failing to timely provide him with information he requested regarding the officers involved in his traffic stop and arrest. (Docket No. 1 at 12). Plaintiff states that Goodwin's actions amount to a violation of the First, Fifth, and Fourteenth Amendments. (Docket No. 1 at 25-26).

8

As to the Florissant Police Department, plaintiff contends that the Department was "grossly negligent in training and supervising" its officers, were deliberately indifferent to his rights, and should also be held liable pursuant to the doctrine of respondeat superior. (Docket No. 1 at 27).

Because of this incident, plaintiff states that he suffers from "mental anguish, psychological torture, laceration to [his] feelings, shame, degradation, humiliation, and fear." (Docket No. 1 at 21). He is seeking declaratory judgment that defendants' actions violated various provisions of the United States Constitution. (Docket No. 1 at 27-28). He further seeks compensatory and punitive damages. (Docket No. 1 at 31-34).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983. He alleges that various law enforcement officers violated his constitutional rights by illegally searching his vehicle, illegally searching his phone, performing an illegal body cavity search, failing to intervene to stop the search, placing him in a hot car, and illegally arresting him. He also asserts a claim against the Custodian of Records for not responding to his information request in a timely fashion. For the reasons discussed below the Court will dismiss the claim against the Florissant Police Department, the official capacity claims against all defendants, and the claim against defendant Karen Goodwin. Furthermore, the Court will dismiss plaintiff's excessive force claim against defendant Dustin Edwards. Finally, the Court will stay all the claims relating to plaintiff's traffic stop, the search of his vehicle and cell phone, and his arrest, pending the outcome of his state criminal case.

## A. Claim Against Florissant Police Department

Plaintiff has named the Florissant Police Department as a defendant in this action. The Florissant Police Department is a department of the municipality of Florissant, and not a distinctly

9

juridical entity, suable as such. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Therefore, this claim must be dismissed.

Even if plaintiff had named Florissant as the proper party defendant, his claim would still be subject to dismissal. A local governing body such as Florissant can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove Florissant's liability.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other

10

evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff presents no facts to support the proposition that Florissant has an unconstitutional policy or custom that caused plaintiff's constitutional rights to be violated. He has not shown that a policy exists, because none of his facts point to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *See Angarita*, 981 F.2d at 1546. Plaintiff has also not shown a "widespread, persistent pattern of unconstitutional misconduct" by Florissant employees, much less that such misconduct was tacitly authorized by Florissant officials. *See Johnson*, 725 F.3d at 828. Indeed, plaintiff's allegations concern actions taken during a single traffic stop. The Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Plaintiff does specifically allege that the Florissant Police Department failed to train its employees. The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of his constitutional rights. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). A plaintiff must also show that the failure to train caused the injury. *See Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011).

In this case, while plaintiff asserts that Florissant failed to train its employees, he provides no factual support for his proposal. That is, there are no facts showing that Florissant had notice that its training procedures were inadequate and likely to result in a constitutional violation.

12

Furthermore, plaintiff has presented no facts showing that any purported failure to train actually caused his alleged injury. In short, the only thing that plaintiff has presented in his complaint is a legal conclusion, devoid of any factual enhancement. This is insufficient to state a claim. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief").

Finally, plaintiff contends that Florissant is liable based on the doctrine of respondeat superior. This assertion is without merit. "[A] municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 690. *See also A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, as discussed above, plaintiff can only demonstrate the liability of a municipality by showing there was an unconstitutional policy, unconstitutional custom, or a deliberately indifferent failure to train or supervise. He has failed to do this. As such, he has failed to state a municipal liability claim against Florissant, and the claim must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**B. Official Capacity Claims**

Plaintiff has asserted official capacity claims against defendants Edwards, Osmer, Goodwin, Doe #1, and Doe #2. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.

13

1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, defendants are all alleged to be employed by the Florissant Police Department. Thus, plaintiff's official capacity claims against them are actually claims against Florissant itself. In order to prevail on an official capacity claim, the plaintiff must establish Florissant's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. As discussed above, however, plaintiff has failed to demonstrate that Florissant had an unconstitutional policy or custom, or was deliberately indifferent in failing to train or supervise its employees. Therefore, the official capacity claims against defendants must be dismissed.

## C. Individual Capacity Claim Against Defendant Goodwin

The individual capacity claim against Custodian of Records Goodwin must be dismissed, because plaintiff's facts do not demonstrate that she committed a constitutional violation. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). A plaintiff bringing a § 1983 action must include in his complaint "either direct or

14

inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015).

Here, plaintiff has not alleged facts showing that Goodwin violated his constitutional rights. His allegations against her consist of his contention that Goodwin did not immediately respond to his request for information, and that plaintiff only received the requested information after his third and fourth request. Nothing in this allegation demonstrates the violation of a constitutional right. Likewise, the fact that Goodwin did not divulge defendants' home addresses to plaintiff certainly fails to state a constitutional violation, as plaintiff demonstrates no entitlement to that information. Furthermore, while plaintiff asserts that he made his request under the Freedom of Information Act, the Privacy Act, and the Missouri Sunshine Law, there is nothing in this contention implicating matters of a constitutional dimension. As plaintiff has not shown that Goodwin violated the constitution, he has failed to state a claim under § 1983. Therefore, the individual capacity claim against Goodwin must be dismissed.

### D. Excessive Force Claim Against Detective Edwards

Plaintiff alleges that Detective Edwards "cruelly and unusually punished" him when Edwards shut off the air conditioner and rolled up the windows while plaintiff was in his vehicle. As plaintiff was not a convicted and sentenced prisoner at the time, the Court construes this claim under the Fourth Amendment.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's

15

prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018). "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019). To that end, law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minims use of force." *Robinson*, 937 F.3d at 1136.

Here, plaintiff asserts that Detective Edwards locked him in Edward's car, and later rolled up the windows and turned off the air conditioner. Plaintiff further states that the car was hot. This is not sufficient to state an excessive force claim. Clearly, plaintiff being locked in a car while law enforcement officer conduct an investigation is not excessive, in and of itself. As to the car being hot, and plaintiff's contention that he was "tortured," plaintiff does not allege how long he was in

16

the vehicle, whether he was in danger, or whether he suffered an injury. He also makes no mention of his own behavior during this time. For these reasons, plaintiff's excessive force claim against Detective Edwards must be dismissed.

## E. Illegal Stop, Illegal Search, and Illegal Arrest Claims

Plaintiff has alleged that Detective Edwards, Detective Osmer, Officer Doe #1, and Officer Doe #2 illegally stopped him, illegally searched his vehicle and cell phone, and illegally arrested him. As a result of plaintiff's arrest, he was charged with one count of felony possession of a controlled substance. *State of Missouri v. Kavenaugh*, No. 18SL-CR08763 (21st Jud. Cir., St. Louis County). The state criminal case is still pending, with a preliminary hearing scheduled for June 18, 2020.[3]

In *Wallace v. Kato*, the Supreme Court observed that it was common practice in 42 U.S.C. § 1983 actions to stay the civil proceedings until an underlying criminal case had ended. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). The Supreme Court explained that where a plaintiff files a claim before he is convicted, and that claim is related to rulings that will likely be made in a pending or anticipated criminal trial, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. Otherwise, the court and the parties are left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict, all this at a time when it can hardly be known what evidence the prosecution has in its possession." *Id.* at 393 (internal citation omitted). If plaintiff is ultimately convicted, this

---

[3] Plaintiff's underlying state court case was reviewed on Case.net, Missouri's online case management system. The Court takes judicial notice of this public record. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

Court must dismiss any claim that would "necessarily imply the invalidity of his conviction or sentence," unless he can show that the conviction or sentence has already been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994).

Here, plaintiff alleges that the law enforcement defendants, at various times, illegally stopped his vehicle; illegally searched his vehicle; planted evidence against him; illegally searched his cell phone; provided false information to his Illinois parole agent to secure an arrest warrant; and illegally arrested him based on an Arizona warrant. These are all matters likely to come up during plaintiff's criminal proceeding. Allowing plaintiff to proceed on these claims risks having a civil judgment that would impugn a potential criminal verdict. Therefore, the Court concludes that the principles of *Wallace v. Kato* dictate that further consideration of the illegal stop, illegal search, and illegal arrest claims should be stayed until the underlying criminal matter against plaintiff has been resolved. To that end, the Court will stay this proceeding with respect to those claims, and administratively close this case pending final disposition of *State of Missouri v. Kavenaugh*, No. 18SL-CR08763 (21st Jud. Cir., St. Louis County). Plaintiff will be directed to notify the Court in writing once final disposition of his criminal charge has occurred.

### F. Strip Search and Failure to Intervene Claims

Plaintiff alleges that Detective Edwards performed an illegal strip search – which he terms a "body cavity search" – and that Officer Doe #1 failed to intervene to stop it. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. Under the Fourth Amendment, strip searches raise special considerations. *Robinson*, 937 F.3d at 1136. Specifically, "the need for the particular search must be balanced against the invasion of personal rights that the search entails." *Franklin v. Lockhart*, 769 F.2d 509, 510-11 (8th Cir. 1985).

18

"In determining reasonableness, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *United States v. Williams*, 477 F.3d 974, 975 (8th Cir. 2007). To that end, "searches involving penetration or public exposure of genitals are considered more intrusive that those not involving such means." *Robinson*, 937 F.3d at 1137. In order to comport with the Fourth Amendment, "strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns," "should be conducted by officials of the same sex as the individual to be searched," and "should be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion." *Richmond v. City of Brooklyn Center*, 490 F.3d 1002, 1008 (8th Cir. 2007). *See also Robinson*, 937 F.3d at 1138 (affirming district court's denial of qualified immunity to a police officer who conducted a strip search on a female suspect in view of a male officer, in an unsanitary parking lot, while calling her insulting names).

As explained above, the Court is staying plaintiff's illegal stop, illegal search, and illegal arrest claims, as well as administratively closing this proceeding. To the extent that plaintiff has a claim against Detective Edwards for an illegal strip search, and against Officer Doe #1 for failing to intervene, he may file a separate lawsuit in this Court.[4] The Court will instruct the Clerk of Court to provide plaintiff with a copy of the Court's prisoner civil rights complaint form.

### G. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998)

---

[4] Because plaintiff alleges that nothing was found during Detective Edwards's strip search, it does not appear that a civil finding that the search was illegal would necessarily imply the invalidity of any potential conviction in his criminal case. *See, e.g., Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1008 (8th Cir. 2014) (noting that a finding of excessive force against defendant would not necessarily imply the invalidity of plaintiff's convictions).

19

(stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim...and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. As explained above, the Court is staying plaintiff's illegal stop, illegal search, and illegal arrest claims, and administratively closing this case. The Court will entertain future motions for appointment of counsel at a later date, after the final disposition of plaintiff's criminal proceeding.

## H. Motion for Service of Process at Government Expense

Plaintiff has filed a motion for service of process at government expense. (Docket No. 5). Pursuant to 28 U.S.C. § 1915(d), the Court "shall issue and serve all process." However, as explained above, the Court is not directing that process be issued at this time. Specifically, the Court is dismissing plaintiff's claim against the Florissant Police Department, all the official capacity claims, the excessive force claim against Detective Edwards, and the claim against Custodian of Records Goodwin. Moreover, as to plaintiff's illegal stop, illegal search, and illegal arrest claims, the Court is staying those claims and administratively closing this case pending

20

resolution of plaintiff's underlying criminal case in Missouri state court. Therefore, plaintiff's motion will be denied at this time.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $64.33 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's claims against the Florissant Police Department, the official capacity claims against all defendants, the excessive force claim against Dustin Edwards, and the claim against Karen Goodwin are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that all remaining proceedings in this case are **STAYED** and this case is **ADMINISTRATIVELY CLOSED** pending final disposition of the criminal proceedings against plaintiff relating to *State of Missouri v. Kavenaugh*, No. 18SL-CR08763 (21st Jud. Cir., St. Louis County). This case may be reopened by plaintiff filing a motion to reopen the case after final disposition of his state criminal case, including final disposition of any appellate proceedings and post-conviction proceedings.

**IT IS FURTHER ORDERED** that plaintiff shall notify the Court in writing concerning the final disposition of the criminal charges against him in *State of Missouri v. Kavenaugh*, No. 18SL-CR08763 (21st Jud. Cir., St. Louis County).

21

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a copy of the

Court's prisoner civil rights form, and a copy of the Court's motion to proceed in forma pauperis

form.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be

taken in good faith.

Dated this 19th day of May, 2020.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

22