**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

WILLIAM DANIEL KAVANAUGH, )
)
Plaintiff, )
)
v. ) No. 4:19-cv-03256-NCC
)
DUSTIN EDWARDS, et al., )
)
Defendants. )

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff William Daniel Kavanaugh to reopen his case. (Docket No. 13). Plaintiff's case was administratively closed on May 19, 2020, pending final disposition of his criminal charges. (Docket No. 8). For the reasons discussed below, plaintiff's motion will be granted, and the Clerk of Court directed to reopen this case. Additionally, the Court will direct the Clerk of Court to issue process on defendant Dustin Edwards in his individual capacity as to plaintiff's illegal stop, search, and arrest claims, and on defendant Nicholas Osmer in his individual capacity as to plaintiff's illegal search and arrest claims.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that

requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff is a self-represented litigant who is currently an inmate at the Macoupin County Jail in Carlinville, Illinois. On December 11, 2019, he filed a civil action pursuant to 42 U.S.C.

§ 1983, naming Detective Dustin Edwards, Detective Nicholas Osmer,[1] Custodian of Records Karen Goodwin, the Florissant Police Department, John Doe #1, and John Doe #2 as defendants. (Docket No. 1 at 3-5). Defendants were sued in both their official and individual capacities. Along with the complaint, plaintiff filed a motion for leave to proceed in forma pauperis. (Docket No. 3). The motion was granted, and plaintiff assessed an initial partial filing fee.

The forty-two page complaint was handwritten on a Court form. Attached to the complaint were a number of exhibits, including Freedom of Information Act requests, a state court docket sheet, a statement of probable cause authored by Detective Edwards, and an Illinois parole violation report. The Court reviewed these exhibits and treated them as part of the pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

In his "Statement of Claim," plaintiff asserted that on July 27, 2018, he was involved in a traffic stop on Interstate 270 in Florissant, Missouri. (Docket No. 1 at 4). During the stop, plaintiff alleged that his constitutional rights were violated in various ways. (Docket No. 1 at 4, 7).

Plaintiff stated that the traffic stop was initiated by Detective Edwards. (Docket No. 1 at 13). According to plaintiff, Detective Edwards first told him that he was pulled over because "the

[1] Confusingly, plaintiff also names Detective Unknown Osmond and John Doe #3 as defendants. However, in the body of the complaint, plaintiff states his belief that Nicholas Osmer is the "true identity of Detective Osmond." (Docket No. 1 at 2). Later, plaintiff further explains that John Doe #3 is also believed to be Nicholas Osmer. (Docket No. 1 at 17). In short, defendants Osmer, Osmond, and Doe #3 appear to be the same person. Plaintiff reinforces this interpretation in subsequent filings, where he refers only to Detective Edwards, Detective Osmer, and two additional John Doe defendants. (Docket No. 14 at 2). For the sake of clarity, and based on plaintiff's allegations, the Court will refer only to defendant Osmer.

license plate did not match the vehicle." Later, Detective Edwards allegedly "changed his story" to say that plaintiff had not used a turn signal. (Docket No. 1 at 14).

Detective Edwards had plaintiff step out of the vehicle and patted him down for weapons. Plaintiff stated that Detective Edwards asked him for consent to search the vehicle, but that plaintiff repeatedly advised Edwards that he was not giving him permission. He further stated that Detective Edwards did not have a warrant or probable cause. At this point, Detective Edwards put plaintiff in handcuffs, informed plaintiff that Edwards was "the Dope Police," and told plaintiff that Edwards was going to search the vehicle.

Officer Doe #1 was the second officer on scene. This officer "stood guard over" plaintiff while Detective Edwards "did a very thorough search of the vehicle." In particular, plaintiff stated that Detective Edwards "searched the undercarriage, looked in the gas tank, under the hood, in the wheel-walls, in the dashboard, [and] even removed all plastic molding and door panels inside the vehicle." (Docket No. 1 at 15). Beyond that, Detective Edwards also "searched through [plaintiff's] electronic messages that were on a cell phone inside the vehicle." Detective Edwards questioned plaintiff about "an outgoing message on the phone, asking for an ounce." Plaintiff advised Detective Edwards that "he was confused," because "the outgoing message…[was] a message from [plaintiff], asking for an address."

Following this exchange, plaintiff stated that Detective Edwards told him that Edwards "wanted to search [plaintiff] better." Detective Edwards further advised plaintiff that if he did not have anything illegal on him, he "would be free to leave." Plaintiff consented to having his pockets searched. However, Detective Edwards advised that "he wanted to perform a body cavity search," but was not allowed to do so in a public place. (Docket No. 1 at 15-16). Detective Edwards then asked plaintiff to go to the Florissant Police Department so that Edwards could conduct a body

cavity search. (Docket No. 1 at 16). Plaintiff refused to accompany Detective Edwards or agree to a body cavity search because he was not under arrest.

Plaintiff alleged that Detective Edwards became angry at this response and re-searched plaintiff's vehicle, again finding nothing. Next, despite plaintiff's refusal to consent to a body cavity search, Detective Edwards took plaintiff to the side of Edwards's car, while plaintiff was still handcuffed. Detective Edwards allegedly unfastened plaintiff's belt and pulled down his pants and underwear. Plaintiff claimed that Detective Edwards "used his hands, as well as a cold metal object," to conduct a search. During this incident, plaintiff stated that Officer Doe #1 "stood by and watched."

Nothing was found as a result of this search, and Detective Edwards "made the decision to release" plaintiff. (Docket No. 1 at 16-17). However, as Detective Edwards was removing plaintiff's handcuffs, Detective Osmer and Officer Doe #2 arrived on scene. (Docket No. 1 at 17).

Detective Osmer and Officer Doe #2 performed another search of plaintiff's vehicle. Plaintiff stated that this search was conducted without his consent, without a warrant, and without probable cause. During this search, Detective Osmer "claimed" to find an illegal substance. Plaintiff believed this "was planted[,] fabricated evidence." He asserted that defendants wanted to use this evidence against him in an attempt to put him in jail, and to "impede [his] right to take legal action and pursue justice against" Detective Edwards.

Detective Edwards put handcuffs back on plaintiff and "locked [plaintiff] in the back seat of [Edwards's] car." At this point, plaintiff noted that "the windows were rolled down just enough for fresh air flow," and the air conditioner was on. Plaintiff was left in the car "unsupervised" while Detective Edwards allegedly "conspired with the other officers." After speaking with the other officers, Detective Edwards gave plaintiff two options. (Docket No. 1 at 17-18). First, plaintiff was

told that he could cooperate with Detective Edwards, after which plaintiff would be allowed to drive away without being charged. (Docket No. 1 at 18). Second, if plaintiff did not cooperate, Detective Edwards "would retaliate against [him] by contacting [his] Illinois parole agent and convince him to issue a parole violation warrant for [his] arrest." Plaintiff advised Detective Edwards that he did not know anything about Edwards's investigation. He also "invoked [his] right to an attorney, even though [Edwards] failed to read [plaintiff his] Miranda Rights."

Thereafter, plaintiff alleged that "retaliation began." He asserted that Detective Edwards rolled up the windows in the car and shut off the air conditioner "while he conspired with the other officers." Furthermore, Detective Osmer contacted plaintiff's Illinois parole agent and "convinced him to issue a parole violation warrant for [plaintiff's] arrest." Plaintiff claimed that Detective Osmer provided his parole agent "a false set of facts" when Osmer told the agent that plaintiff had new felony drug charges. Specifically, plaintiff asserted that he had not yet been charged with possession of methamphetamines, and that there was no way anyone could have known – prior to lab testing – that the substance allegedly found in his vehicle was methamphetamines. (Docket No. 1 at 18-19).

Upon plaintiff's arrival at the Florissant Police Department, Detective Edwards took him to an interview room where he "performed another body cavity search." (Docket No. 1 at 19). Plaintiff was ultimately booked into jail, but stated that he was not charged until November 28, 2018, in the case of *State of Missouri v. Kavenaugh*, No. 18SL-CR08763 (21st Jud. Cir., St. Louis County).[2]

Subsequent to his booking, plaintiff "made several attempts to gain access to all defendant information" relevant to his civil complaint. (Docket No. 1 at 11). The information he requested

---

[2] The Court notes that plaintiff's last name is given a different spelling in the Missouri state court case caption than that provide by plaintiff in the instant case.

included full names, badge numbers, and addresses for the purpose of service of process. Nonetheless, plaintiff claimed that Custodian of Records Goodwin "has engaged in a shell game." (Docket No. 1 at 12). In particular, he asserted that Goodwin did not provide him with his requested information until "after [his] third and fourth request." Moreover, he complained that the addresses provided by Goodwin were not defendants' personal addresses, but the address for the Florissant Police Department.

Based on these allegations, plaintiff asserted that Detective Edwards violated his constitutional rights by performing an illegal search of his vehicle, his cell phone, and his person. (Docket No. 1 at 7-8). Plaintiff asserted that Detective Edwards's actions violated his Fourth and Eighth Amendment rights. (Docket No. 1 at 23-25). He also claimed that Detective Edwards "tortured" him and violated the Eighth Amendment when Edwards shut off the air conditioner and rolled up the windows of Edwards's car while plaintiff was in the backseat. (Docket No. 1 at 10). Plaintiff further stated that Detective Edwards illegally arrested him for an Arizona probation violation, even though "the geographical boundaries on that warrant" included only states surrounding Arizona. (Docket No. 1 at 13). He alleged that this arrest violated the Fifth and Fourteenth Amendments. (Docket No. 1 at 26).

As to Officer Doe #1, plaintiff asserted that Doe #1 failed to intervene and protect him against Detective Edwards, even though Detective Edwards violated plaintiff's rights "right in front of him." (Docket No. 1 at 8). Specifically, plaintiff stated that Officer Doe #1 did not protect him against Detective Edwards's "unreasonable body cavity search, sexual assault, torture, and public humiliation." (Docket No. 1 at 8-9). Instead, Officer Doe #1 "just stood by and watched." (Docket No. 1 at 9).

As to Officer Doe #2, plaintiff alleged that Doe #2 performed an illegal search of plaintiff's vehicle, without consent, a search warrant, or probable cause. Plaintiff asserted that this search violated the Fourth Amendment. (Docket No. 1 at 28).

As to Detective Osmer, plaintiff accused Osmer of illegally searching plaintiff's vehicle without consent, a search warrant, or probable cause, in violation of the Fourth Amendment. (Docket No. 1 at 9, 28). Furthermore, plaintiff asserted that Detective Osmer contacted his Illinois parole agent and convinced him to issue a parole violation warrant based on a false set of facts. (Docket No. 1 at 10). Plaintiff contended that Detective Osmer's interactions with the Illinois parole agent violated his Fifth and Fourteenth Amendment rights. (Docket No. 1 at 25).

As to Custodian of Records Goodwin, plaintiff blamed Goodwin for failing to timely provide him with the information he requested regarding the officers involved in his traffic stop and arrest. (Docket No. 1 at 12). Plaintiff stated that Goodwin's actions amounted to a violation of the First, Fifth, and Fourteenth Amendments. (Docket No. 1 at 25-26).

As to the Florissant Police Department, plaintiff contended that the Department was "grossly negligent in training and supervising" its officers, were deliberately indifferent to his rights, and should also be held liable pursuant to the doctrine of respondeat superior. (Docket No. 1 at 27).

Due to this incident, plaintiff stated that he suffers from "mental anguish, psychological torture, laceration to [his] feelings, shame, degradation, humiliation, and fear." (Docket No. 1 at 21). He sought a declaratory judgment that defendants' actions violated various provisions of the United States Constitution. (Docket No. 1 at 27-28). He further sought compensatory and punitive damages. (Docket No. 1 at 31-34).

Because plaintiff was proceeding in forma pauperis, the Court reviewed his complaint pursuant to 28 U.S.C. § 1915. (Docket No. 8). Based on that review, the Court dismissed plaintiff's claim against the Florissant Police Department, noting that it was not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). Even if plaintiff had named the City of Florissant as the proper party defendant, his claim still failed, as he had not demonstrated that Florissant was liable due to a policy, custom, or failure to train. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (explaining that 42 U.S.C. § 1983 liability may attach to a municipality if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise"). Furthermore, the Court determined that plaintiff's respondeat superior claim against the Florissant Police Department was unavailing, because respondeat superior is not available under 42 U.S.C. § 1983. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). As such, the claim against the Florissant Police Department was dismissed.

With regard to the official capacity claims, the Court explained that such claims were actually against defendants' employer, the Florissant Police Department. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (explaining that an official capacity claim against an individual was actually "against the governmental entity itself"); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (explaining that a "suit against a public employee in his or her official capacity is merely a suit against the public employer"); and *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"). To prevail on his official capacity claims, plaintiff was required to establish the liability of the City of Florissant for the alleged conduct. *See Kelly v. City*

*of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Plaintiff, however, failed to present facts demonstrating that he was harmed due to a City of Florissant policy, custom, or failure to train. As such, plaintiff's official capacity claims were dismissed.

With regard to the individual capacity claim against Custodian of Records Goodwin, the Court noted that plaintiff had not established that Goodwin violated the constitution. *See Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016) ("To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States"). In particular, plaintiff's facts did not support the proposition that Goodwin's alleged delay in responding to his records request, and Goodwin's refusal to provide the personal addresses of various law enforcement officers, amounted to a constitutional violation. As such, the individual capacity claim against Custodian of Records Goodwin was dismissed.

With regard to the individual capacity excessive force claim against Detective Edwards, the Court determined that plaintiff's allegations were insufficient to state a claim. While plaintiff stated that he was locked in a hot car without air conditioning or the windows rolled down, he had not presented facts regarding how long he was in the car, whether he was in danger, or whether he suffered an injury. As such, the excessive force claim against Detective Edwards was dismissed.

With regard to plaintiff's claims that Detective Edwards, Detective Osmer, Officer Doe #1, and Officer Doe #2 illegally stopped him, illegally searched his vehicle and cell phone, and illegally arrested him, the Court determined that such claims were related to rulings likely to be made in his pending criminal case. The Court noted that if plaintiff was ultimately convicted and sentenced in his state court case, these claims would "necessarily imply the invalidity of his conviction or sentence," and be subject to dismissal pursuant to *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994). However, because plaintiff's state criminal case was pending at the time, the Court

stayed these claims and administratively closed the case. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). Plaintiff was advised to notify the Court upon the final disposition of the criminal charges against him, and to file a motion to reopen.

In its initial review, the Court also noted that plaintiff had presented claims against Detective Edwards for an illegal strip search and against Officer Doe #1 for failing to intervene. Under the Fourth Amendment, strip searches raise special considerations. *See Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019). Furthermore, because plaintiff alleged nothing was found during the strip search, it did not appear that a civil finding the search was illegal would necessarily imply the invalidity of any potential conviction in his criminal case. *See, e.g., Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1008 (8th Cir. 2014) (noting that a finding of excessive force against defendant would not necessarily imply the invalidity of plaintiff's convictions). However, the Court explained that it was staying plaintiff's illegal stop, illegal search, and illegal arrest claims, as well as administratively closing this proceeding. To the extent that plaintiff had a claim against Detective Edwards for an illegal strip search, and against Officer Doe #1 for failing to intervene, the Court advised him that he could file a separate lawsuit. Plaintiff was provided a copy of the Court's prisoner civil rights complaint form to assist him.

On May 28, 2020, plaintiff filed a separate lawsuit against Detective Edwards, Detective Osmer, and Officer John Doe regarding an "unreasonable body cavity search" and a failure to intervene. *Kavanaugh v. Edwards, et al.*, No. 4:20-cv-00712-JAR (E.D. Mo.). That case is currently pending.

On May 19, 2021, plaintiff submitted a notice to the Court of the final disposition of his criminal case. (Docket No. 12). In the notice, plaintiff asserted that *State of Missouri v. Kavenaugh*, No. 18SL-CR08763 (21st Jud. Cir., St. Louis County) had been dismissed. Attached to the notice

was an order of nolle prosequi filed by Assistant Prosecuting Attorney John Frisella. (Docket No. 12 at 3).

**Motion to Reopen**

On May 21, 2021, plaintiff filed the instant motion to reopen this case, along with a memorandum in support. (Docket No. 13; Docket No. 14). In the motion, plaintiff again states that his criminal case has been dismissed. Attached to the motion is another copy of the order of nolle prosequi. Plaintiff's memorandum asserts that he has fulfilled the Court's conditions, and that he should be allowed to proceed on his allegations regarding an illegal traffic stop, illegal searches, and illegal arrest.

**Discussion**

Plaintiff is a self-represented litigant who has brought this civil action pursuant to 42 U.S.C. § 1983. The Court previously dismissed plaintiff's official capacity claims, as well as the claim against the Florissant Police Department, the claim against Custodian of Records Goodwin, and the excessive force claim against Detective Edwards. Plaintiff's claims regarding an illegal stop, illegal search, and illegal arrest were stayed, pending the outcome of plaintiff's criminal case. Furthermore, this proceeding was administratively closed. Plaintiff has now moved to reopen this case. For the reasons discussed below, plaintiff's motion will be granted, and the Clerk of Court directed to reopen this case.

Additionally, because plaintiff is proceeding in forma pauperis, the Court has reviewed his remaining claims pursuant to 42 U.S.C. § 1983. Based on that review, the Court will direct the Clerk of Court to issue process on defendant Dustin Edwards in his individual capacity as to plaintiff's illegal stop, search, and arrest claims, and on defendant Nicholas Osmer in his individual capacity as to plaintiff's illegal search and arrest claims.

**A. Motion to Reopen Case**

In its order of May 15, 2020, the Court stayed plaintiff's illegal stop, illegal search, and illegal arrest claims under *Wallace v. Kato*. The Court did so because these were matters likely to come up during plaintiff's then-pending criminal proceeding. Allowing plaintiff to go forward risked having a civil judgment that would impugn a potential criminal verdict, in violation of *Heck v. Humphrey*. Accordingly, the Court administratively closed the case, and directed plaintiff to file a notice with the Court once final disposition of his criminal charge had occurred. He was further advised that he could file a motion to reopen the case after final disposition.

Now, plaintiff has moved to reopen this case, pursuant to the Court's earlier instructions. In support, he asserts that his criminal charge has been dismissed. Attached to his motion is an order of nolle prosequi filed by the prosecuting attorney. Because plaintiff's criminal case has been dismissed, plaintiff's illegal stop, search, and arrest claims are no longer a risk to impugn a potential verdict. Therefore, the Court will grant plaintiff's motion, and reopen this proceeding. Plaintiff's previously-stayed claims will be screened below pursuant to 28 U.S.C. § 1915.

**B. Illegal Stop Claim**

The Fourth Amendment protects the right of people to be secure "against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, a traffic stop constitutes a seizure. *United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 715 (8th Cir. 2014). Nonetheless, a traffic stop is reasonable under the Fourth Amendment "if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Green*, 946 F.3d 433, 438 (8th Cir. 2019). Thus, in general, "[t]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). *See also United*

*States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008) (explaining that a law enforcement officer "who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment"). To that end, any traffic violation, no matter how minor, provides probable cause for a traffic stop. *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994). *See also United States v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010) ("Even a minor traffic violation provides probable cause for a traffic stop").

In this case, plaintiff accuses Detective Edwards of performing an illegal traffic stop. To support this proposition, he alleges that Detective Edwards initially told plaintiff that he had been pulled over because "the license plate did not match the vehicle," and that the license plate "came back to nothing." Later, Detective Edwards "changed his story" to say that plaintiff had not used his turn signal. Based on these shifting motives for pulling him over, plaintiff asserts that neither reason for the traffic stop is true. The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, plaintiff's claim regarding an illegal traffic stop is sufficient for purposes of initial review. Therefore, the Clerk of Court will be directed to issue process on Detective Edwards in his individual capacity as to this claim.

**C. Illegal Searches**

Plaintiff contends that Detective Edwards illegally searched both his cell phone and his automobile without a warrant or probable cause. Similarly, he states that Detective Osmer also illegally searched his vehicle.

**i. Cell Phone Search**

As previously noted, the Fourth Amendment protects the right of people to be secure "against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment's

guarantee against unreasonable searches extends to data on a person's private cellular telephone." *United States v. Suellentrop*, 953 F.3d 1047, 1049 (8th Cir. 2020).

Here, plaintiff alleges that Detective Edwards searched through his electronic messages without first obtaining a warrant, without consent, and without probable cause. By way of demonstration, plaintiff states that Detective Edwards first searched his vehicle and found nothing. Despite his failure to find any contraband or evidence of a crime, Detective Edwards then went through plaintiff's phone. The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones*, 915 F.3d at 499. As such, plaintiff's claim regarding an illegal search of his phone is sufficient for purposes of initial review. Therefore, the Clerk of Court will be directed to issue process on Detective Edwards in his individual capacity as to this claim.

**ii. Vehicle Searches**

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, searches conducted without a warrant are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *United States v. Goodwin-Bey*, 584 F.3d 1117, 1119 (8th Cir. 2009).

One of these exceptions "permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so." *Cronin v. Peterson*, 982 F.3d 1187, 1197 (8th Cir. 2020). *See also United States v. McGhee*, 944 F.3d 740, 742 (8th Cir. 2019) (explaining that the "automobile exception" allows "an officer to legally search a vehicle if he has probable cause"); and *United States v. Grooms*, 602 F.3d 939, 942-43 (8th Cir. 2010) (explaining that one of the "well-delineated exceptions [to the Fourth Amendment] is the warrantless search of vehicles," which "authorizes a search of any area of the vehicle in which evidence might be found"). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability

that contraband or evidence of a crime would be found in a particular place." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). A warrantless search can also be made pursuant to voluntary consent. *Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019).

In this case, plaintiff asserts that both Detective Edwards and Detective Osmer searched his vehicle without a warrant, without probable cause, and without his consent. To support this assertion, plaintiff states that Detective Edwards pulled him over without a valid reason. After removing plaintiff from the vehicle and patting him down for weapons, Detective Edwards asked plaintiff to consent to a search. Plaintiff "repeatedly" told Detective Edwards that Edwards did not have his permission. Detective Edwards then handcuffed plaintiff, advised plaintiff that Edwards was "the Dope Police," and told plaintiff that Edwards was going to search the vehicle anyway, despite there being no indication that contraband or evidence of a crime would be found there. According to plaintiff, Detective Edwards performed a thorough search of the vehicle and found nothing.

After Detective Osmer arrived on scene, he also conducted a search of plaintiff's vehicle without a warrant, without probable cause, and without plaintiff's consent. Ultimately, Detective Osmer – despite Detective Edwards's earlier search – claimed to have found an illegal substance. Plaintiff asserts that this was planted evidence. In any event, before undertaking the search of plaintiff's vehicle, there was nothing to indicate to either Detective Edwards or Detective Osmer that an illegal substance might be found.

The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones*, 915 F.3d at 499. As such, plaintiff's claim against Detective Edwards and Detective Osmer for an illegal search of his vehicle is sufficient for purposes of initial review.

Therefore, the Clerk of Court will be directed to issue process on Detective Edwards and Detective Osmer in their individual capacities as to this claim.

**D. Illegal Arrest**

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). However, a false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Probable cause exists where there are facts and circumstances within a law enforcement officer's knowledge that are sufficient to lead a person of reasonable caution to believe that a suspect has committed or is committing a crime. *Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8th Cir. 2012). *See also Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) ("An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense").

Probable cause can still exist even when an officer mistakenly arrests a suspect, as long as the mistake is objectively reasonable. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Similarly, the fact that a suspect arrested by law enforcement is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976). Nonetheless, the substantial latitude given to law enforcement officers is "not without limits," and an officer "is not free to disregard plainly exculpatory evidence." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Furthermore, "probable cause does not exist when a minimal further investigation would have exonerated the suspect." *Id.*

Here, plaintiff alleges that Detective Edwards and Detective Osmer illegally arrested him. In support, plaintiff asserts that Detective Edwards thoroughly searched his vehicle and found no

contraband or evidence of a crime. When Detective Osmer arrived, plaintiff claims that Osmer found an illegal substance, which Osmer planted. Detective Edwards then tried to get plaintiff to "cooperate," saying that he could then drive away. If plaintiff did not cooperate, however, Detective Edwards threatened to call plaintiff's "Illinois parole agent and convince [the agent] to issue a parole violation warrant for [plaintiff's] arrest." After plaintiff refused to cooperate, Detective Osmer called the Illinois parole agent and falsely told the agent that plaintiff had new felony charges, even though plaintiff had not committed a crime or been charged. In short, plaintiff insists that Detective Edwards and Detective Osmer did not have an arrest warrant for him, that any probable cause was based on fabricated evidence, and that they provided false information to plaintiff's Illinois parole agent in order to secure a reason to arrest him.

The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones*, 915 F.3d at 499. As such, plaintiff's claims against Detective Edwards and Detective Osmer for an illegal arrest is sufficient for purposes of initial review. Therefore, the Clerk of Court will be directed to issue process on Detective Edwards and Detective Osmer in their individual capacities as to these claims.

**E. John Doe Defendants**

Plaintiff has named two Doe defendants in this case. To the extent that plaintiff has made allegations against John Doe #1 and John Doe #2 for an illegal stop, search, or arrest, the Court cannot issue process on them because they have not been properly identified. However, the Court will **not** dismiss these two Doe defendants at this time, as plaintiff's allegations appear sufficient to permit their identification following reasonable discovery. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to reopen case (Docket No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall reopen this case.

**IT IS FURTHER ORDERED** that to the extent plaintiff has made allegations against defendants John Doe #1 and John Doe #2, the Court will not dismiss these defendants at this time, but will provide plaintiff time during discovery to ascertain their identities so they may be served.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendant Dustin Edwards in his individual capacity as to plaintiff's claims of an illegal stop, illegal search, and illegal arrest, and on defendant Nicholas Osmer in his individual capacity as to plaintiff's claims of an illegal search and illegal arrest.

Dated this 2nd day of June, 2021.

Ronnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**