UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DANIEL KAVANAUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-3256-MTS |
| ) | |
| DUSTIN EDWARDS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Edwards's Partial Motion for Summary Judgment, Doc. [83], pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's Complaint, Doc. [43], for several constitutional violations pursuant to 42 U.S.C. § 1983.  For reasons discussed below, the Court grants summary judgment as to some claims but denies summary judgment on others.

**I.    BACKGROUND**

Plaintiff William Daniel Kavanaugh, a *pro se* litigant, brought this action against Defendant Dustin Edwards and against Nicholas Osmer ("Osmer"), police detectives for the Florissant Police Department, in connection with a traffic stop.

On July 17, 2018, Defendant initiated a traffic stop of a vehicle operated by Plaintiff.[1] Defendant approached the vehicle and spoke with Plaintiff.  *Compare* Doc. [85-3], *with* Doc. [88-2] ¶¶ 43–45.  While the parties dispute most of what was said during this conversation, both parties agree that Plaintiff told Defendant about an outstanding warrant for arrest by the State of Arizona (the "Arizona warrant").  Doc. [88-2] ¶ 10; Doc. [85-2] ¶ 12(d).  During the conversation,

---

[1] The parties dispute the traffic stop violation for which Defendant pulled Plaintiff over.  Doc. [85-2] ¶ 7 (Defendant maintains he pulled Plaintiff over based on his "failure to use a turn signal in violation of traffic laws"); Doc. [88-2] ¶¶ 2, 40 (Plaintiff states Defendant told Plaintiff he pulled him over because the license plate did not match the vehicle).

1

Defendant states Plaintiff exhibited nervous behavior[2] "consistent with narcotic usage based upon [Defendant's] training and experience with drug crimes and investigations."  Doc. [85-2] ¶ 11. Plaintiff disputes this behavior and maintains Defendant has been "untruthful" about Plaintiff's "behavior and actions during the traffic stop."  Doc. [87] at 4.

      Defendant requested Plaintiff exit the vehicle and Plaintiff complied.  Defendant conducted a pat down search of Plaintiff for weapons and found none.  Defendant asked Plaintiff for consent to search the vehicle for contraband.  The parties dispute whether Plaintiff gave consent.  Doc. [88-2] ¶ 14; Doc. [85-2] ¶ 18; Doc. [85-5] ¶ 11.  At this point, Plaintiff states Defendant placed him under arrest pursuant to the Arizona warrant.  Doc. [88-2] ¶ 15.  Defendant denies this arrest. Defendant searched the vehicle and did not find any contraband.

      At some point while roadside, Defendant requested Florissant Dispatch conduct a computer inquiry of Plaintiff's name.  The inquiry confirmed Plaintiff had an active probation violation in the State of Arizona for possession of drugs and that Plaintiff was currently on parole through the State of Illinois.  Also, at some point while roadside, Osmer arrived on the scene.

      Plaintiff claims Defendant asked him for consent to conduct a strip search at the scene of the traffic stop, to which Plaintiff did not consent.  Plaintiff claims Defendant conducted a strip search of Plaintiff where Defendant "sexually assaulted" him.  Doc. [85-1] at 5, 9, 17–18, 20. Plaintiff explains that "while [he] was still handcuffed, [Edwards] unfastened [Plaintiff's] belt, pulled down [his] pants and underwear down to [his] ankles and told [him] to spread [his] legs. Next, Edwards used his hands and a cold metal object to spread [Plaintiff's] buttocks apart and

---

[2] Specifically, Defendant stated Plaintiff's hands were uncontrollably "shaking to the point he had difficulty retrieving identification from the vehicle glove box," Plaintiff's voice was "trembling," and Plaintiff "stumbl[ed] over his words and had difficulty completing sentences."  Doc. [85-2] ¶ 11.  Plaintiff disputes he exhibited this behavior.  Doc. [88-2] ¶¶ 4–8 (Plaintiff stating his "hands were not shaking," that he "did not have difficulty retrieving documents from the glove box," that he did not have "any trouble forming a sentence," and that his "voice was not trembling" at "anytime during the traffic stop").

poke/push at [his] penis and genitals." Doc. [88-2] ¶ 24.  Defendant denies he conducted a strip search of Plaintiff during the traffic stop.  After the alleged strip search, Plaintiff states Defendant removed the handcuffs, "called [him] a piece of shit and told [Plaintiff] to stay the fuck out of Florissant."  Doc. [88-2] ¶ 26–27.

A later search[3] of the vehicle was conducted and two clear plastic baggies containing a crystalized substance were found in a concealed compartment in the front passenger door of the vehicle.  Defendant believed the crystalized substance to be consistent with methamphetamine.  Defendant handcuffed[4] Plaintiff for violating the Missouri controlled substance law and placed Plaintiff in his patrol car to take to the police station.  Upon arrival at the Florissant Police Department, Plaintiff alleges Defendant placed Plaintiff in an interview room and conducted a second strip search of Plaintiff.  Doc. [88-2] ¶ 34.  Defendant denies he performed a strip search of Plaintiff at the police station.  Doc. [85-2] ¶ 28.  According to Plaintiff, his last contact with Edwards was when Edwards took Plaintiff to a booking cell at the police station.  Doc. [85-4] at 22 (86:13–21).  Ultimately, Plaintiff was "booked, processed and released pending application of [a] warrant" for a drug charge relating to the traffic stop.  Doc. [85-3] at 2.  After the St. Louis County Police Department Crime Laboratory confirmed the substance found in the vehicle was methamphetamine, Doc. [85-8], on November 28, 2018, Plaintiff was charged in the Circuit Court of St. Louis County, Missouri for "Possession of Controlled Substance Except 35 Grams or Less of Marijuana/Synthetic Cannabinoid-Class D Felony."[5]  Doc. [85-9].

---

[3] The Court notes the parties dispute who conducted the search and whether this was a second or third search of the vehicle.  Doc. [88-2] ¶¶ 23–24, 29; Doc. [85-2] ¶ 22.

[4] The parties also dispute whether Defendant provided Plaintiff a *Miranda* warning.

[5] At this time, Plaintiff was still confined in Illinois.  After being released from an Illinois correctional facility in early 2019, Plaintiff was extradited back to Missouri on the traffic stop charge, where he posted bond and pled not guilty at arraignment.  Doc. [85-4] at 24 (94:15–95:10).

3

Plaintiff claims Defendant violated his Fourth Amendment rights by unlawfully conducting a traffic stop, searching the vehicle and cell phone without a warrant, arresting Plaintiff without a warrant, and conducting two strip searches of Plaintiff, one during the traffic stop and one at the police station.  Doc. [85-1].  Defendant moves for summary judgment on all claims, except for the claim based on the unlawful traffic[6] stop and alleged strip search during the traffic stop.[7]  Doc. [83].

## II.     LEGAL STANDARD

Because Plaintiff is proceeding *pro se*, the Court is bound to liberally construe his filings in order to do substantial justice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Native Am. Council of Tribes v. Solem*, 691 F.2d 382, 384 (8th Cir. 1982).  However, a litigant's *pro se* status does not excuse him from compliance with the Federal Rules of Civil Procedure or the Local Rules of this District.  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("Although *pro se* pleadings are to be construed liberally, *pro se* litigants are not excused from failing to comply with substantive and procedural law.").

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)).  A dispute is not "genuine" unless the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the initial burden of explaining the basis for its motion, and it must identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Torgerson v. City of*

---

[6] The Court notes Defendant did not mention in his motion for summary judgment Plaintiff's Fourth Amendment claim for unlawful traffic stop, a violation previously acknowledged by the Court.  *See* Doc. [15] 13–14.

[7] A jury trial in this case is currently set for Tuesday, May 16, 2023.  Doc. [96].

4

*Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford*, 880 F.3d at 996. If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views any factual disputes in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.   DISCUSSION**

Plaintiff brings several Fourth Amendment claims against Defendant. "The Fourth Amendment protects against unreasonable searches and seizures." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019). Pertinent to the motion here, Plaintiff's Fourth Amendment claims are based on a warrantless search of the vehicle, cellphone, and his person, and a warrantless arrest. In support of his motion for summary judgment, Defendant argues there were no Fourth Amendment violations or that he is entitled to qualified immunity.

"Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A police detective, like Defendant, is entitled to qualified immunity unless the evidence establishes (1) a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation such that a reasonable person would have known that his actions were unlawful. *Blazek v. Iowa City*, 761 F.3d 920, 922–23 (8th Cir. 2014). In the context of a qualified immunity defense on an unlawful

5

search or arrest claim, the Court ascertains whether a defendant violated clearly established law by asking whether there was "arguable probable cause" for the challenged conduct. *Ryno v. City of Waynesville*, -- F.4th --, 2023 WL 411389, at *6 (8th Cir. Jan. 26, 2023). If possible, the Court may resolve the case under either prong of the analysis. *Blazek*, 761 F.3d at 923; *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) ("Because an official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met."); *see also Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

A. **Unreasonable Search of Vehicle**

Plaintiff claims Defendant violated his Fourth Amendment rights by searching the vehicle without a warrant, probable cause, or consent. It is undisputed no warrant existed to search the vehicle. "Searches conducted without a warrant are per se unreasonable subject to a few well-established exceptions." *United States v. Madrid*, 152 F.3d 1034, 1037 (8th Cir. 1998) (citing *Horton v. California*, 496 U.S. 128, 133 (1990)). In support of his motion for summary judgment, Defendant argues two of these exceptions: consent to search and probable cause under the automobile exception.[8] Alternatively, Defendant argues he is entitled to qualified immunity on this claim because he had "*arguable* probable cause" to search the vehicle.

The Court finds that several disputes of fact most likely prevent the Court from granting summary judgment based on Defendant's cited exceptions to a warrantless search.[9] Nonetheless, the Court grants summary judgment because based on the *undisputed* facts, Defendant had

---

[8] Under the automobile exception, an officer may conduct "warrantless searches of an automobile and seizures of contraband where there is 'probable cause to believe that an automobile contains contraband.'" *United States v. Farrington*, 42 F.4th 895, 899 (8th Cir. 2022) (quoting *United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016)).
[9] Specifically, the behavior, actions, and statements of Plaintiff that Defendant found "consistent with narcotic usage," Doc. [85-2] ¶ 11, which thus supported probable cause, are in dispute. *Compare* Doc. [88-2] ¶¶ 3–8, *with* Doc. [85-2] ¶ 11–12. Also, whether Plaintiff consented to the vehicle search is plainly in dispute. Doc. [88-2] ¶ 14; Doc. [85-2] ¶ 18.

6

"arguable"[10] probable cause to search the vehicle and, therefore, is entitled to qualified immunity on that basis. *Brown v. City of St. Louis*, 40 F.4th 895, 902 (8th Cir. 2022) ("We decline to decide whether the officers had probable cause, choosing instead to begin and end our analysis on the clearly established prong, as is our prerogative."); *see Ryno*, 2023 WL 411389, at *6 (explaining "[e]ven if the officers did not have probable cause to" search a plaintiff, an officer is still entitled to qualified immunity if he had "*arguable* probable cause").

The undisputed facts Defendant cited are as follows. Prior to his search of the vehicle, Defendant conducted a roadside inquiry of Plaintiff via Florissant Dispatch that revealed (1) Plaintiff had an active Arizona warrant for probation violation due to a charge of possession of narcotics, (2) Plaintiff was on active parole in Illinois and wearing an ankle monitor (but Plaintiff was currently in Missouri),[11] and (3) Plaintiff had an extensive criminal history, including several criminal charges for possession of controlled substances. Doc. [85-2] ¶¶ 12(b), (d), 16–17; Doc. [85-3] at 2. While this is a close call, a reasonable officer could have mistakenly believed he had probable cause to search the vehicle for contraband. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1060 (8th Cir. 2013) (explaining the "existence" of "arguable probable cause depends on the viewpoint of an objectively reasonable officer, not the viewpoint of the particular arresting officer" (citing *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004))). Therefore, Defendant is entitled to qualified immunity on this claim because he had arguable probable cause to search the vehicle.

---

[10] Defendant is entitled to qualified immunity if he had "*arguable* probable cause" to search the vehicle. *Schaffer v. Beringer*, 842 F.3d 585, 592 (8th Cir. 2016) (emphasis added).

[11] It is undisputed Plaintiff was actively violating the terms of his Illinois parole by crossing state lines without permission. *See, e.g.*, Doc. [85-4] at 6–7 (24:9–25:16) (deposition testimony of Plaintiff admitting that he could not have contested that violation because he was not allowed to leave the Illinois without permission, and he did).

B. **Unreasonable Search of Cell Phone**

Plaintiff claims Defendant violated his Fourth Amendment rights by searching text messages on his cell phone without consent or a warrant. Doc. [85-1] at 14. Defendant argues he is entitled to summary judgment because there was no Fourth Amendment violation as Plaintiff cannot have an expectation of privacy in a phone he does not own.

"A plaintiff seeking damages under § 1983 for an unreasonable search must allege . . . an unlawful search." *Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019) (citing *Heck v. Humphrey*, 512 U.S. 477, 487 n.7 (1994)). "With regard to the content of cell phones, [a Plaintiff] 'must first establish that he personally has a legitimate expectation of privacy in the object that was searched.'" *United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015) (quoting *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014)).

It is undisputed that Plaintiff did not own the cell phone that he claims was searched. Doc. [85] ¶ 66. In his Opposition Brief, Plaintiff does not address this claim or Defendant's argument that he is entitled to summary judgment on Plaintiff's claim for unreasonable search of cell phone. *See* Doc. [87]. Without any argument to support the conclusion that Plaintiff had a legitimate expectation of privacy in the cell phone, Plaintiff cannot show a violation of his Fourth Amendment rights. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) ("The essential elements of a § 1983 claim . . . [include] that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."). Therefore, Defendant is entitled to summary judgment for any claims relating to his search of the cellphone.

C. **Wrongful Arrest**

Plaintiff claims Defendant violated his Fourth Amendment rights by wrongfully arresting Plaintiff for an Arizona warrant that had jurisdictional limitations. Defendant argues he is entitled

8

to summary judgment on this claim because he ultimately arrested Plaintiff for drugs, or alternatively, that even if he did arrest Plaintiff for the Arizona warrant, qualified immunity protects Defendant's mistaken arrest. In support of these arguments, however, Defendant points to clearly disputed facts. *Liberty Lobby*, 477 U.S. at 248 ("[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Despite Defendant's assertion to the contrary, there *is* a dispute as to whether he arrested Plaintiff for the Arizona warrant; thus, summary judgment is a precluded on this basis. The Court notes, however, that to the extent Plaintiff's wrongful arrest claim is for Defendant's ultimate arrest based on violation of the Missouri controlled substance law, that claim will not stand as the arrest was based on probable cause of finding drugs in the vehicle.[12] *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) ("A warrantless arrest does not violate 'the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011))). Thus, the Court denies summary judgment only to the extent Plaintiff seeks damages for the alleged temporary wrongful arrest based on the Arizona warrant.

Alternatively, Defendant argues that even if he *did* arrest Plaintiff for the Arizona warrant, summary judgment would still be proper because Defendant is entitled to qualified immunity.

---

[12] Similarly, the Court notes that any argument by Plaintiff that Defendant's arrest for drugs is unconstitutional based on the chain of unconstitutional conduct that immediately preceded it will not withstand summary judgment. *See Lingo v. City of Salem*, 832 F.3d 953, 959 (9th Cir. 2016) ("[F]ederal courts of appeals have widely held that the exclusionary rule does not apply in § 1983 cases."); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) (holding the "exclusionary rule does not apply in a civil suit against police officers"); *Townes v. City of New York*, 176 F.3d 138, 146, 148 (2d Cir. 1999) ("In a § 1983 suit . . . [t]he fruit of the poisonous tree doctrine is not available to elongate the chain of causation. . . . The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all."); *Machado v. Weare Police Dep't*, 494 F. App'x 102, 106 (1st Cir. 2012); *Flora v. Sw. Iowa Narcotics Enf't Task Force*, 292 F. Supp. 3d 875, 898 n.21 (S.D. Iowa 2018) (citing a string of cases where "Federal courts have widely held that the fruit of the poisonous tree doctrine likewise does not define the scope of a person's Fourth Amendment rights in civil rights lawsuits brought pursuant to § 1983").

Specifically, Defendant argues he is entitled to qualified immunity because he made an objectively reasonable mistake when determining he had probable cause to make the arrest based on the Arizona warrant. *See Jacobson v. Mott*, 623 F.3d 537, 540 (8th Cir. 2010) ("In the wrongful arrest context, officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable."); *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (explaining arguable probable cause exists "even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable"). Whether Defendant mistakenly arrested Plaintiff, however, is an issue that remains in dispute.[13] *See, e.g.*, Doc. [88-2] ¶¶ 10, 13 (stating Defendant told Plaintiff that Defendant knew the geographical limitations of the warrant prior to the arrest).[14]

Essentially, on this claim, Defendant asks this Court to do what it cannot do on a motion for summary judgment—find that his recitation of the facts is true, and Plaintiff's is false. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (prohibiting a court from weighing evidence or making credibility determinations on summary judgment). As such, the Court denies summary judgment for wrongful arrest because genuine issues of material fact remain.

---

[13] Notably, Plaintiff points to evidence that Defendant knew of the geographical limitation *at the time of the arrest*, as opposed to learning of the limitation post-arrest. *Cf. New v. Denver*, 787 F.3d 895, 901 (8th Cir. 2015) (explaining "hindsight evidence" is irrelevant to a probable cause analysis because the analysis focuses on the "reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest*") (emphasis added); *see Garang v. City of Ames*, 2 F.4th 1115, 1123 (8th Cir. 2021) (explaining "probable cause is determined 'at the moment the arrest was made,' [and] any later developed facts are irrelevant to the probable cause analysis for an arrest'" (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008))).

[14] Taking Plaintiff's facts as true—that Defendant knew the Arizona warrant did not confer on him the ability to arrest Plaintiff—a reasonable officer would have known arresting Plaintiff at this point in time was unlawful.

D.  **Unreasonable Strip Search**[15]

Plaintiff claims Defendant violated his Fourth Amendment rights by conducting a strip search of Plaintiff at the Florissant Police Department.  Specifically, Plaintiff states Defendant conducted a strip search of Plaintiff and his "body cavity" in an interview room at the police station following his arrest.  Doc. [85-1] at 12.  Although Defendant denies he performed any strip search of Plaintiff at the police station, Doc. [85-2] ¶ 28, Defendant argues there could be no Fourth Amendment violation as a matter of law because the strip search was conducted at the police department as part of the "standard intake process." Doc. [84] at 14–15.  In support of his motion, Defendant points to *Florence v. Board of Chosen Freeholders*, 566 U.S. 318 (2012).

Defendant is correct that "the Supreme Court held in *Florence v. Board of Chosen Freeholders* that the Fourth Amendment permits suspicionless strip searches of individuals about to enter the general population of a detention facility." *Pecsi v. City of Niles*, 674 F. App'x 544, 546 (6th Cir. 2017) (citing *Florence*, 566 U.S. at 318); *see also Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015) (explaining *Florence* "ruled that correctional officers must be allowed to conduct an effective search of detainees—even those held for minor offenses—before they are admitted to a general jail population").  Surely, though, *Florence* does not read so broadly as to mean a police detective can always conduct a suspicionless search of an arrestee detained in an interview room at a police station.  *Hebshi v. United States*, 32 F. Supp. 3d 834, 845 (E.D. Mich. 2014) ("*Florence* does not give jailors carte blanche to strip-search anyone in their custody regardless of the circumstances.").  This is especially true, here, where there is not any record evidence or argument that Defendant was to place Plaintiff in the "general population" of a detention facility.  *Florence*, 566 U.S. at 322 & 325 ("The case proceeds on the understanding that the officers searched

---

[15] Defendant moves for partial summary judgment on this claim, as he does not move for summary judgment based on the alleged strip search at the scene of the traffic stop.

11

detainees prior to their *admission to the general population*" and "the controversy concerns whether every detainee who will be *admitted to the general population* may be required to undergo a close visual inspection while undressed" (emphasis added)). To the contrary, Defendant "booked, processed and released [Plaintiff] pending application of [a] warrant" for the charges relating to the traffic stop. Doc. [85-3] at 2. As such, the Court cannot say that Defendant's search did not violate Plaintiff's Fourth Amendment rights as a matter of law.[16] Therefore, the Court denies summary judgment on this claim.[17]

## CONCLUSION

Defendant is entitled to qualified on immunity on Plaintiff's claim for unreasonable search of the vehicle and the cellphone. The Court denies summary judgment on Plaintiff's claim for wrongful arrest because genuine disputes of material fact remain. Finally, the Court denies summary judgment on Plaintiff's claim for unreasonable strip search at the police station because the jury must determine whether the search occurred and was reasonable.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [83], is **GRANTED** in part, and **DENIED** in part.

Dated this 17th day of February, 2023.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[16] The Court notes Defendant did not move for summary judgment on the constitutionality, i.e., reasonableness, of the search as articulated in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). *See also Robinson v. Hawkins*, 937 F.3d 1128, 1136–38 (8th Cir. 2019) (analyzing whether the strip search of an arrestee was "reasonable in its scope, manner, and location").

[17] As explained in Footnote 12, the Court notes Plaintiff's argument fails to the extent Plaintiff argues the strip search at the police station violated his constitutional rights because it was not incident to a lawful arrest.