UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DANIEL KAVANAUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-3256-MTS |
| ) | |
| DUSTIN EDWARDS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Nicholas Osmer's Motion for Partial Summary Judgment, Doc. [80], pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's Complaint, Doc. [43], for several constitutional violations pursuant to 42 U.S.C. § 1983. Plaintiff William Daniel Kavanaugh, a *pro se* litigant, brought this action against Defendants Osmer ("Defendant") and Dustin Edwards ("Edwards"), police detectives for the Florissant Police Department, in connection with a traffic stop. For reasons discussed below, the Court grants Defendant's motion for partial summary judgment.

**I.    BACKGROUND**

On July 27, 2018, Edwards initiated a traffic stop of a vehicle operated by Plaintiff. At the time of the traffic stop, Plaintiff was on active parole in the State of Illinois. At some point during the traffic stop, Defendant arrived on the scene after responding to a radio "call out." Doc. [82-5] ¶ 6. During the traffic stop, Plaintiff claims Edwards conducted unlawful warrantless searches of the vehicle and a cell phone and conducted a strip search and sexually assaulted Plaintiff.[1] Plaintiff claims Defendant did not "physically conduct any search during the entire" traffic stop, Doc. [90]

---

[1] For a more detailed version of the facts, see the Court's Memorandum and Order denying in part and granting in part Defendant Dustin Edwards's Motion for Summary Judgment. *See* Doc. [101].

¶ 21, but was present during these incidents and did not intervene to stop Edwards's unconstitutional conduct.

During the traffic stop, two clear plastic baggies containing a crystalized substance were recovered from the vehicle and believed to be consistent with methamphetamine. Edwards arrested Plaintiff for possession of methamphetamine and drove Plaintiff to the Florissant Police Department. While in the car, according to Plaintiff, Edwards told Plaintiff that if he refused to be an informant, Edwards would "convince" Plaintiff's parole officer to issue a warrant for Plaintiff's arrest. Doc. [90-2] ¶ 31. Plaintiff refused and allegedly invoked his right to an attorney. *Id.* ¶ 32.

Defendant contacted Plaintiff's Illinois parole officer ("Parole Officer") and informed him of Plaintiff's arrest in Florissant, Missouri due to Plaintiff's possession of methamphetamine. Doc. [82-5] ¶ 19; *see also* Doc. [82-6] at 1 (the Parole Violation Report states that Defendant notified the parole agent that Plaintiff "had been arrested earlier that day in Florissant Missouri" due to "being caught with an amount of methamphetamine (approximately 2 whole ounces) much larger than is generally obtained for individual consumption"). It is Defendant's usual practice to contact the parole officer when a suspect is taken into custody. Doc. [82-5] ¶ 20. Plaintiff claims, however, that Defendant reported "false facts" to Parole Officer in retaliation for Plaintiff refusing to become an informant. *See* Doc. [90-2] ¶ 33; Doc. [90] ¶ 18–19; Doc. [82-1] at 11–12, 14. Specifically, Plaintiff claims Defendant lied to Parole Officer saying Plaintiff had a new felony drug charge but, in reality, Plaintiff was not actually "charged" with anything related to the July 2018 traffic stop until four months later in November 2018. Doc. [90] ¶ 18; *see also* Doc. [82-9] (St. Louis County v. William Kavanaugh Charge for "Possession of Controlled Substance . . . Class D Felony").

2

Upon learning of Plaintiff's arrest and because Plaintiff "went to Missouri without authorization," Parole Officer issued an Illinois Department of Corrections ("IDOC") warrant "to ensure that [Plaintiff] would remain in a secure facility due to his being a flight risk." Doc. [82-6] at 1. Plaintiff was confined in St. Louis County while awaiting extradition to Illinois. *Id.* at 1–2; Doc. [85-4] at 6 (22:1–23:8). Shortly after, Plaintiff was extradited to an Illinois correctional center and there, confined for 190 days. Doc. [85-4] at 6 (22:1–23:8), at 22–23 (86:22–21); Doc. [85-1] at 14.

In total, Parole Officer issued a Parole Violation Report against Plaintiff with seven charges of alleged parole violations, including failing to get Parole Officer's "permission before leaving the State of Illinois," "knowingly associating with other persons on parole or mandatory supervised release without prior written permission," "possession of narcotics or other controlled substances," "being in places where controlled substances are illegally sold, used, distributed, or administered," and failure to comply with "additional conditions of release" including "substance abuse treatment." *Id.* at 3. Plaintiff waived his right to a preliminary hearing on these violations but would later be "given a full revocation hearing before the Prisoner Review Board."[2] *Id.* Plaintiff does not claim, and no evidence establishes, that Plaintiff's parole was ultimately revoked.

Plaintiff brings several claims of constitutional violations against Defendant based on the unreasonable search of the vehicle, cell phone, and strip search during the traffic stop and "retaliation" that led to Plaintiff's parole violation warrant. Doc. [82-1]. Defendant moves for summary judgment on all claims, except for the claim based on his alleged failure to intervene during Edward's strip search during the traffic stop. Doc. [80].

---

[2] It is unclear from the record what parole violations, if any, Plaintiff was ultimately charged for.

**II.     LEGAL STANDARD**

Because Plaintiff is proceeding *pro se*, the Court is bound to liberally construe his filings in order to do substantial justice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Native Am. Council of Tribes v. Solem*, 691 F.2d 382, 384 (8th Cir. 1982). However, a litigant's *pro se* status does not excuse him from compliance with the Federal Rules of Civil Procedure or the Local Rules of this District. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("Although *pro se* pleadings are to be construed liberally, *pro se* litigants are not excused from failing to comply with substantive and procedural law.").

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). A dispute is not "genuine" unless the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of explaining the basis for its motion, and it must identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford*, 880 F.3d at 996. If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views any factual disputes in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute

as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.    DISCUSSION**

Plaintiff brings several constitutional violations against Defendant.  Pertinent to the motion here, Plaintiff's claims are based on Defendant's failure to intervene in Edward's warrantless search of the vehicle and cell phone and for "retaliating" against Plaintiff by reporting Plaintiff's Missouri arrest to Parole Officer.  Defendant argues he is entitled to qualified immunity on Plaintiff's claims.  "Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A police detective, like Defendant, is entitled to qualified immunity unless the evidence establishes (1) a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation such that a reasonable person would have known that his actions were unlawful.  *Blazek v. Iowa City*, 761 F.3d 920, 922–23 (8th Cir. 2014).  If possible, the Court may resolve the case under either prong of the analysis. *Blazek*, 761 F.3d at 923; *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) ("Because an official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met."); *see also Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

A. **Failure to Intervene in Unreasonable Search of Vehicle**

Plaintiff claims Defendant violated his Fourth Amendment rights by failing to intervene in the unreasonable search of the vehicle by Edwards,[3] a different named defendant, during the July 2018 traffic stop.  *See, e.g.*, Doc. [89] at 2–3 (Plaintiff stating in his Opposition Brief that Defendant violated Plaintiff's Fourth Amendment rights "by being present for the vehicle search

---

[3] At summary judgment, Plaintiff maintains Defendant never searched his vehicle at all.  Doc. [90] ¶¶ 10–13; Doc. [90-2] ¶ 19.

5

conducted by Edwards without a warrant, probable cause or consent and for failing to stop the search" and "fail[ing] to intervene"). Plaintiff offers no legal authority to support the existence of a law enforcement officer's duty to intervene to prevent an unreasonable search of a vehicle. To the contrary, the U.S. Court of Appeals for the Eighth Circuit has declined to extend a duty to intervene to prevent constitutional violations, other than for violations of excessive force. *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013) ("As an initial matter, we recently held that, outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations."); *see also Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("A law enforcement officer who knows another officer is using excessive force has a duty to intervene. . . . We have not recognized a duty to intervene to prevent other constitutional violations."). Because there is no clearly established law regarding a law enforcement officer's duty to intervene outside of the excessive force context, Defendant is entitled to qualified immunity on Plaintiff's claim for failure to intervene in an unreasonable vehicle search.

B. **Failure to Intervene in Unreasonable Search of Cell Phone**

Plaintiff claims Defendant violated Plaintiff's Fourth Amendment rights by failing to intervene in Edward's warrantless search of the cell phone during the traffic stop.[4] Doc. [90] ¶ 21. Like Plaintiff's claim for unreasonable search of the vehicle, Defendant is entitled to qualified immunity on Plaintiff's claim that Defendant failed to intervene in Edwards's alleged unconstitutional cell phone search because there is no clearly established law regarding a law enforcement officer's duty to intervene outside of the excessive force context. *See Hess*, 714 F.3d at 1052.

---

[4] In responding to Defendant's statement of material fact that states, "Plaintiff alleges a § 1983 claim for unreasonable search of cell phone, alleging that Osmer searched text messages on Plaintiff's cell phone without a warrant or consent," Doc. [82] ¶ 71(b), Plaintiff specifically controverts paragraph "71(b)" and reiterates that Defendant did *not* "physically conduct any search during the entire" traffic stop, Doc. [90] ¶ 21.

6

The Court notes Defendant is entitled to qualified immunity on this claim for another reason, too.  There is no Fourth Amendment violation for a cell phone search unless the person "has a legitimate expectation of privacy in the object that was searched.'" *United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015) (quoting *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014)).  It is undisputed Plaintiff did not own the cell phone he claims was searched.  Doc. [82] ¶ 66.  In his Opposition Brief, Plaintiff does not address this issue, claim, or Defendant's argument that he is entitled to summary judgment on this claim.  *See* Doc. [89].  Without any argument to support the conclusion that Plaintiff had a legitimate expectation of privacy in the cell phone he did not own, Plaintiff cannot show a violation of his Fourth Amendment rights.  *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) ("The essential elements of a § 1983 claim . . . [include] that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.").  Therefore, Defendant is entitled to qualified immunity, under either prong of the analysis, for Plaintiff's claim for failure to intervene in unreasonable search of the cell phone.

C. **Retaliation Claim**

Plaintiff claims Defendant "retaliated" against him by reporting "false facts" to Parole Officer, which resulted in a parole violation warrant and subsequent incarceration of 190 days.  *See* Doc. [90-2] ¶ 33; Doc. [82-1] at 11–12, 14; Doc. [90] ¶ 18.  Plaintiff seeks "$500,000" in damages directly resulting from Defendant's "retaliation" and reporting of "a false set of facts" to Parole Officer that resulted "in cruel and unusual punishment" and "deprivation of liberty and amenity and the denial of Due Process" in violation of his "Fifth and Fourteenth Amendment rights."  Doc. [85-1] at 18–19, 21.  The Court is not entirely clear what specific claim Plaintiff asserts here based on the smorgasbord of rights alleged, especially considering Plaintiff's failure to entirely address this claim in his Opposition Brief.  *See* Doc. [89].  Keeping in mind Plaintiff is

7

a *pro se* litigant, however, the Court liberally construes his claim for violations sounding in the Fifth, Eighth, and Fourteenth Amendments. *See* Doc. [85-1] at 18–19, 21.

To the extent Plaintiff's claim here is for due process violations under the Fifth[5] and Fourteenth Amendments, Defendant is entitled to qualified immunity. It is well established that parole revocation deprives an individual of "conditional liberty," which "is valuable and must be seen as within the protection of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 480–82 (1972). The Supreme Court explained the "process that is due" for a parole revocation is at two stages in the revocation process—first, when the parolee is "arrested and detained," including at the "preliminary hearing," and second "when the parole is formally revoked." *Id.* at 485–490; *see also Belk v. Purkett*, 15 F.3d 803, 805–14 (8th Cir. 1994) (applying *Morrissey* and analyzing whether a parolee was denied due process because of his revocation).

Here, Parole Officer—not Defendant—issued a parole violation warrant which "detained" Plaintiff based on alleged parole violations and for being a "flight risk."[6] *See* Doc. [82-6] at 1. Plaintiff does not allege any issues with the arrest, detention, or proceedings related to the parole violations.[7] Nor does Plaintiff seek damages against Parole Officer or the IDOC. Instead, Plaintiff's claim is that Defendant's "retaliation" caused Parole Officer and/or the IDOC to deprive Plaintiff of the "liberty" at issue. Even if true, there is no due process violation here *against*

---

[5] To the extent Plaintiff brings a Fifth Amendment claim against Defendant, Defendant is entitled to summary judgment because he is *not* a federal employee. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law.") (cleaned up); *Hess v. Ables*, 714 F.3d 1048, 1053 (8th Cir. 2013) (a Fifth Amendment claim is unsustainable against non-federal government defendants); *Warren v. Gov't Nat'l. Mortg. Ass'n.*, 611 F.2d 1229, 1232 (8th Cir. 1980) (the Due Process Clause of the Fifth Amendment applies to the federal government, while the Fourteenth Amendment Due Process Clause applies to the States).

[6] Notably, there are seven alleged parole violations, at least five of which are *unrelated to the July 2018 traffic stop*. *See* Doc. [82-6] at 1.

[7] To the contrary, Plaintiff admits he *did* violate his parole, regardless of what the Board ultimately concluded. *See, e.g.*, Doc. [85-4] at 6–7 (24:9–25:16).

*Defendant* as he had nothing to do with Plaintiff's arrest or detention based on the parole violations, Plaintiff's parole revocation hearing, or the final parole revocation, if any. Therefore, Defendant is entitled to qualified immunity for any claims based on due process violations for reporting to Parole Officer or for Plaintiff's subsequent confinement based on parole violations.

To the extent Plaintiff's claim here sounds as an Eighth Amendment violation, Defendant is entitled to qualified immunity. "Eighth Amendment protection extends to conditions of incarceration and confinement." *Kulkay*, 847 F.3d at 642 (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Plaintiff does not allege the conditions of his incarceration are "cruel and unusual." *Kulkay*, 847 F.3d at 642 (analyzing a plaintiff's §1983 claim for violating the Eighth Amendment's ban on "cruel and unusual punishment"). Rather, he complains the *reason* for his confinement is "cruel and unusual." But the Eighth Amendment is not concerned with the circumstances leading to confinement, as so much as the conditions of confinement. As such, because Plaintiff cannot show a violation of the Eighth Amendment, Defendant is entitled to qualified immunity for any claims based on Eighth Amendment violations for "retaliatory" reporting to Parole Officer.

Finally, to the extent Plaintiff's claim here sounds as a malicious prosecution claim, Defendant is entitled to qualified immunity because Plaintiff's claim is based on violations of the Fifth, Eighth, and Fourteenth Amendments.[8] *Harrington v. City of Council Bluffs*, 678 F.3d 676, 679 (8th Cir. 2012) (remarking that "[i]f malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment"); *see also Thompson v. Clark*, 142 S. Ct. 1332,

---

[8] Malicious prosecution by itself does not allege a constitutional injury. *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Rather, a plaintiff must "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). When looking to the substantive allegations of Plaintiff's claim, he states violations of his Fifth, Eighth, and Fourteenth Amendment rights. *See* Doc. [85-1] at 18–19, 21. This is especially notable because unlike the majority of Plaintiff's other claims, Plaintiff specifically grounded his "retaliation" claim in violations *other than* the Fourth Amendment.

1337 (2022) (recognizing a Fourth Amendment claim under § 1983 for malicious prosecution, " sometimes referred to as a claim for unreasonable seizure pursuant to legal process").  Unlike majority of Plaintiff's other claims, Plaintiff specifically grounded his "retaliation" claim in violations other than the Fourth Amendment.  *Hoffert v. Westendorf*, 854 F. App'x 93, 95–96 (8th Cir. 2021) (per curiam) (concluding no malicious prosecution claim or right to be free from prosecution absent probable cause under the Fourteenth Amendment and explaining any claim under the Fourth Amendment was abandoned because the plaintiff "did not expressly invoke the Fourth Amendment, unlike his prior complaints").  As such, Defendant is entitled to qualified immunity for any claims sounding in malicious prosecution.

As a final note, Plaintiff's claim could also be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); *see also Newmy v. Johnson*, 758 F.3d 1008, 1011-12 (8th Cir. 2014) (applying *Heck* to bar plaintiff's § 1983 claim of parole revocation and subsequent extended incarceration); *Flying Horse v. Hansen*, 691 F. A'ppx. 299, 300 (8th Cir. 2017) (per curiam) (same).  However, the record is not clear as to whether Plaintiff's revocation was ultimately revoked and if so, on what basis.  Without more, the Court cannot determine whether a judgment in his favor in this action would render the parole revocation invalid.  *Flying Horse*, 691 F. A'ppx. at 300 (*Heck* bar applied to plaintiff's claim for damages after revocation of parole, because "a judgment in his favor would render the parole revocation invalid").  Regardless of whether *Heck* bars this claim, for the several reasons discussed above, Defendant is entitled to qualified immunity on any claims for retaliation.

## Conclusion

Defendant is entitled to qualified on immunity on Plaintiff's claim for unreasonable search of the vehicle and a cell phone because there is no clearly established right regarding a law enforcement officer's duty to intervene in another officer's unreasonable search.  Defendant is also

10

entitled to qualified immunity on Plaintiff's "retaliation" claim because Plaintiff cannot establish a constitutional violation under the Fifth, Eighth, or Fourteenth Amendments.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment, Doc. [80], is **GRANTED**.

Dated this 17th day of February, 2023.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE